UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 20- 544 (RBK) |
| | : | |
| v. | : | 18 U.S.C. §§ 1349, 1347, 1343, 371, 1035, |
| | : | 1346, 1512(b), and 2 |
| | : | |
| BRIAN SOKALSKY, | : | RECEIVED |
| VINCENT TORNARI, and | : | INDICTMENT |
| ASHLEY LYONS-VALENTI | : | JUN 2 4 2020 |
| | : | AT 8:30     5 30 PM |
| | | WILLIAM T. WALSH |
| | | CLERK |

The Grand Jury in and for the District of New Jersey, sitting in Camden, charges:

## COUNT 1
## (Conspiracy to Commit Health Care Fraud and Wire Fraud)

1.       At all times relevant to this Indictment:

        a.       Defendant BRIAN SOKALSKY was a doctor of osteopathy with medical practices in Ocean City and Somers Point, New Jersey.

        b.       Matthew Tedesco, who is named as a co-conspirator but not as a defendant herein, was a pharmaceutical sales representative.

2.       At all times relevant to this Indictment:

        a.       In New Jersey, the State Health Benefits Program ("SHBP") offered medical and prescription drug coverage to qualified state and local government public employees, retirees, and eligible dependents.  The School Employees' Health Benefits Program ("SEHBP") offered medical and prescription drug coverage to qualified local education public employees, retirees, and eligible dependents.  SHBP and SEHBP each were "health care benefit programs" that affected commerce as defined in 18 U.S.C. § 24(b).

        b.       "Pharmacy Benefits Administrator" provided pharmacy benefit management services for SHBP and SEHBP beneficiaries and other insurance plan beneficiaries

1

pursuant to contracts with the insurance plans. Pharmacy Benefits Administrator adjudicated claims for reimbursement from pharmacies and paid pharmacies for valid claims. Pharmacy Benefits Administrator then billed the insurance plans based on the amount paid to the pharmacies for the claims. Pharmacy Benefits Administrator was a "health care benefit program" that affected commerce as defined in 18 U.S.C. § 24(b).

        c.      In general, compounding was a practice in which a licensed pharmacist combined, mixed, or altered ingredients of one or more drugs in response to a prescription to create a medication tailored to the medical needs of an individual patient. Compounded drugs were not approved by the United States Food and Drug Administration ("FDA"); that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

        d.      Compounded drugs could be appropriately prescribed by a physician when an FDA-approved medication did not meet the health needs of a particular patient. For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the ingredient that triggers the allergic reaction.

      3.      Compounding Pharmacy 1 was a pharmacy located in Louisiana that prepared compounded medications. When Compounding Pharmacy 1 received a prescription for a compounded medication for an individual with prescription drug coverage administered by Pharmacy Benefits Administrator, Compounding Pharmacy 1 would electronically verify coverage with Pharmacy Benefits Administrator, fill the prescription by mailing the compounded medication to the individual, bill Pharmacy Benefits Administrator for the prescription, and receive payment from Pharmacy Benefits Administrator.

2

4.      From in or about April 2015 through in or about February 2016, in Atlantic County, in the District of New Jersey, and elsewhere, defendant

BRIAN SOKALSKY

did knowingly and intentionally conspire and agree with Matthew Tedesco and others to commit certain offenses, namely:

a.      To knowingly and willfully to execute a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347; and

b.      To devise a scheme and artifice to defraud, and to obtain money and property by means of materially false pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, and sounds, contrary to Title 18, United States Code, Section 1343.

**Object of the Conspiracy**

5.      It was the object of the conspiracy for defendant BRIAN SOKALSKY, Matthew Tedesco, and others to unlawfully enrich themselves by: (1) causing the submission of false and fraudulent insurance claims for prescription medications to Pharmacy Benefits Administrator, which enabled Matthew Tedesco and others to receive a percentage of the money that Pharmacy Benefits Administrator paid to Compounding Pharmacy 1 for the prescription medications, and (2) steering individuals recruited to receive Compounding Pharmacy 1 prescription medications

3

to defendant BRIAN SOKALSKY's medical practice, which enabled him to receive insurance payments for those unnecessary patient visits.

### Manner and Means of the Conspiracy

6.      It was part of the conspiracy that defendant BRIAN SOKALSKY, Matthew Tedesco, and others learned that Pharmacy Benefits Administrator would reimburse up to thousands of dollars for one individual's one-month supply of certain compounded and non-compounded prescription medications, including vitamins, scar creams, pain creams, anti-fungal gels, and libido creams.

7.      It was further part of the conspiracy that Matthew Tedesco recruited individuals ("the Recruiters") to identify people who had prescription drug benefits administered by Pharmacy Benefits Administrator ("the Recruits") and who would agree to receive Compounding Pharmacy 1 prescription medications.

8.      It was further part of the conspiracy that, for the prescriptions they arranged, Matthew Tedesco and others would receive from Compounding Pharmacy 1 a percentage of the amount that Compounding Pharmacy 1 received from Pharmacy Benefits Administrator for the medication.  In turn, Matthew Tedesco and others would pay a percentage of the amount received from Compounding Pharmacy 1 to the Recruiters.

9.      It was further part of the conspiracy that Recruiters, in turn, offered Recruits money and other remuneration in exchange for agreeing to receive the prescription medications.

10.      It was further part of the conspiracy that Matthew Tedesco approached defendant BRIAN SOKALSKY about signing Compounding Pharmacy 1 prescriptions for those recruited to participate in the scheme, and defendant BRIAN SOKALSKY agreed to sign the prescriptions.

4

11.     It was further part of the conspiracy that, in exchange for defendant BRIAN SOKALSKY's agreement to sign Compounding Pharmacy 1 prescriptions for patients referred to him, Matthew Tedesco, himself and/or through his Recruiters, referred more than 30 patients to defendant BRIAN SOKALSKY's medical practice.

12.     It was further part of the conspiracy that defendant BRIAN SOKALSKY would bill insurance plans and receive payments for seeing patients referred to his practice by Matthew Tedesco and the Recruiters.

13.     It was further part of the conspiracy that the Recruits saw defendant BRIAN SOKALSKY to obtain Compounding Pharmacy 1 prescriptions with high reimbursement rates under their specific insurance plans, including those with benefits under the SHBP and SEHBP.

14.     It was further part of the conspiracy that Matthew Tedesco provided defendant BRIAN SOKALSKY with pre-printed Compounding Pharmacy 1 prescription forms.

15.     It was further part of the conspiracy that Recruiters also provided Recruits with pre-printed prescriptions forms to take to defendant BRIAN SOKALSKY for his signature.

16.     It was further part of the conspiracy that Matthew Tedesco would notify defendant BRIAN SOKALSKY in advance of appointments made by Recruits who were coming to see him for the sole purpose of obtaining the prescriptions.

17.     It was further part of the conspiracy that defendant BRIAN SOKALSKY instructed Matthew Tedesco, who in turn instructed the Recruiters, that individuals coming to his practice to obtain Compounding Pharmacy 1 prescriptions should specifically ask for or reference the medications while in the patient exam room with him.

18.     It was further part of the conspiracy that Recruiters instructed Recruits to falsely state an ailment before or during their appointment with defendant BRIAN SOKALSKY because

defendant BRIAN SOKALSKY wanted to give the appearance that the office visits and prescriptions were legitimate.

19.    It was further part of the conspiracy that, to avoid detection, defendant BRIAN SOKALSKY instructed Matthew Tedesco that he would sign only two Compounding Pharmacy 1 prescriptions at a time for a Recruit.  On several occasions, following the initial visit, defendant BRIAN SOKALSKY then would sign additional prescriptions for that Recruit at a later date, often without seeing the Recruit again.

20.    It was further part of the conspiracy that most Recruits did not have a prior doctor-patient relationship with defendant BRIAN SOKALSKY and did not return to his medical practice after seeing him to obtain Compounding Pharmacy 1 prescriptions.

21.    It was further part of the conspiracy that defendant BRIAN SOKALSKY signed or authorized Compounding Pharmacy 1 prescriptions that were not medically necessary.  For example:

a.    Defendant BRIAN SOKALSKY signed prescriptions for medications for patients who did not have conditions the medications were supposed to treat, including libido creams for young women who did not have underlying medical conditions to justify the prescriptions.

b.    Defendant BRIAN SOKALSKY signed and authorized prescriptions for medications that were not discussed during the individual's visit with defendant BRIAN SOKALSKY, including medications for medical conditions not discussed with defendant BRIAN SOKALSKY.

6

     c.     Defendant BRIAN SOKALSKY signed and authorized prescriptions for medications without conducting medical evaluations or tests before writing these prescriptions.

22.     It was further part of the conspiracy that after defendant BRIAN SOKALSKY signed a prescription, he did not return the prescription to the Recruit to be filled at a pharmacy chosen by the Recruit. Instead, defendant BRIAN SOKALSKY caused the prescription to be faxed to Compounding Pharmacy 1, which filled the prescription and billed Pharmacy Benefits Administrator.

23.     It was further part of the conspiracy that when Pharmacy Benefits Administrator stopped covering a particular medication and Compounding Pharmacy 1 substituted a different combination of ingredients, Matthew Tedesco gave defendant BRIAN SOKALSKY a list of patients who needed new prescriptions, and defendant BRIAN SOKALSKY authorized the new prescriptions without examining or talking to the patients.

24.     It was further part of the conspiracy that defendant BRIAN SOKALSKY, Matthew Tedesco, and others caused Pharmacy Benefits Administrator to pay Compounding Pharmacy 1 over $5,000,000 for medications.

In violation of Title 18, United States Code, Section 1349.

## COUNTS 2-8
### (Health Care Fraud)

25.    Paragraphs 1-3 and 5-24 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

26.    On or about the dates listed below, in the District of New Jersey and elsewhere, defendant

### BRIAN SOKALSKY

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money owned by and under the custody and control of health care benefit programs, in connection with the delivery of health care benefits, items, and services:

| Count | Date | Execution |
|-------|------|-----------|
| 2 | 7/2/2015 | BRIAN SOKALSKY caused a prescription for Individual 1 to be completed and faxed to Compounding Pharmacy 1 |
| 3 | 7/23/2015 | BRIAN SOKALSKY caused a  prescription for Individual 2 to be completed and faxed to Compounding Pharmacy 1 |
| 4 | 9/15/2015 | BRIAN SOKALSKY caused a prescription for Individual 3 to be completed and faxed to Compounding Pharmacy 1 |
| 5 | 10/8/2015 | BRIAN SOKALSKY caused prescriptions for Individual 4 to be completed and faxed to Compounding Pharmacy 1 |
| 6 | 10/9/2015 | BRIAN SOKALSKY caused prescriptions for Individual 5 to be completed and faxed to Compounding Pharmacy 1 |
| 7 | 10/19/2015 | BRIAN SOKALSKY caused prescriptions for Individual 6 to be completed and faxed to Compounding Pharmacy 1 |
| 8 | 11/2/2015 | BRIAN SOKALSKY caused prescriptions for Individual 7 to be completed and faxed to Compounding Pharmacy 1 |

In violation of Title 18, United States Code, Section 1347, and Title 18, United States Code, Section 2.

8

## COUNTS 9-14
### (Wire Fraud)

27.     Paragraphs 1-3 and 5-24 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

28.     On or about the dates listed below, in the District of New Jersey and elsewhere, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, defendant

### BRIAN SOKALSKY

for the purpose of executing such scheme and artifice, did knowingly and with fraudulent intent transmit and cause to be transmitted by means of wire communications in interstate commerce the following writings, signs, signals, pictures, and sounds:

| Count | Date | From | To | Wire Transmission |
|---|---|---|---|---|
| 9 | 7/2/2015 | Defendant BRIAN SOKALSKY's medical office in New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 8. |
| 10 | 7/8/2015 | Defendant BRIAN SOKALSKY's medical office in New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 5. |
| 11 | 7/23/2015 | Defendant BRIAN SOKALSKY's medical office in New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 4. |
| 12 | 7/27/2015 | Defendant BRIAN SOKALSKY's medical office in New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 9. |
| 13 | 7/28/2015 | Defendant BRIAN SOKALSKY's | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 10. |

| Count | Date | From | To | Wire Transmission |
|-------|------|------|-----|-------------------|
| | | medical office in New Jersey | | |
| 14 | 7/31/2015 | Defendant BRIAN SOKALSKY's medical office in New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 11. |

In violation of Title 18, United States Code, Section 1343, and Title 18, United States Code, Section 2.

## COUNT 15
### (Conspiracy to Commit Health Care Fraud and Wire Fraud)

29.     Paragraph 2 of Count 1 of this Indictment is hereby realleged and incorporated as though set forth in full herein.

30.     Defendant BRIAN SOKALSKY was a doctor of osteopathy with medical practices in Ocean City and Somers Point, New Jersey.

31.     Defendant VINCENT TORNARI was President of Company 1 and received a portion of money that Company 1 received.

32.     Mark Bruno, who is named as a co-conspirator but not as a defendant herein, was a pharmaceutical sales representative.

33.     Compounding Pharmacy 2 was a pharmacy located in Pennsylvania that prepared compounded and other prescription medications.  When Compounding Pharmacy 2 received a prescription, Compounding Pharmacy 2 would fill the prescription by preparing the medication and mailing it to the individual.  Compounding Pharmacy 2 would bill Pharmacy Benefits Administrator for the prescription and receive payment.

34.     Company 1 marketed prescription medications on behalf of Compounding Pharmacy 2, and Compounding Pharmacy 2 paid Company 1 a percentage of the amount that Compounding Pharmacy 2 received for prescriptions originated by Company 1.

35.     From in or about November 2015 through in or about January 2017, in Atlantic County, in the District of New Jersey, and elsewhere, defendants

BRIAN SOKALSKY and
VINCENT TORNARI

did knowingly and intentionally conspire and agree with Mark Bruno and others to commit certain offenses, namely:

11

a.    To knowingly and willfully to execute a scheme and artifice to defraud a health

care benefit program and to obtain, by means of false and fraudulent pretenses,

representations, and promises, money and property owned by, or under the

custody and control of, a health care benefit program in connection with the

delivery of and payment for health care benefits, items, and services, contrary to

Title 18, United States Code, Section 1347; and

b.    To devise a scheme and artifice to defraud, and to obtain money and property by

means of materially false pretenses, representations, and promises, and for the

purpose of executing such scheme and artifice, to transmit and cause to be

transmitted by means of wire communications in interstate commerce, writings,

signs, signals, and sounds, contrary to Title 18, United States Code, Section 1343.

## Object of the Conspiracy

36.    It was the object of the conspiracy for defendants BRIAN SOKALSKY,

VINCENT TORNARI and others to: (a) unlawfully enrich themselves by causing the submission

of false and/or fraudulent insurance claims for prescription medications to Pharmacy Benefits

Administrator or another pharmacy benefits administrator, (b) receive a portion of the money

that Pharmacy Benefits Administrator paid to Compounding Pharmacy 2 for those prescription

medications, and (c) steer individuals recruited to receive Compounding Pharmacy 2 medications

to defendant BRIAN SOKALSKY's medical practice, which enabled him to receive insurance

payments for those unnecessary patient visits.

## Manner and Means of the Conspiracy

37.    It was part of the conspiracy that Company 1 had an agreement with

Compounding Pharmacy 2 under which Company 1 would market Compounding Pharmacy 2

prescription medications, and Compounding Pharmacy 2 would pay Company 1 approximately 50% of the amount Compounding Pharmacy 2 received for each prescription.

38. It was further part of the conspiracy that defendants VINCENT TORNARI and BRIAN SOKALSKY, Mark Bruno, and others learned that, for beneficiaries of the SHBP, SEHBP, and certain other insurance plans, the Pharmacy Benefits Administrator would reimburse up to thousands of dollars for one individual's one-month supply of certain compounded and non-compounded prescription medications, including vitamins, scar creams, and pain creams.

39. It was further part of the conspiracy that defendant VINCENT TORNARI recruited Mark Bruno and others to identify people who had insurance plans and prescription drug benefits administered by Pharmacy Benefits Administrator or another pharmacy benefits administrator ("the Recruits").

40. It was further part of the conspiracy that defendant VINCENT TORNARI and Mark Bruno agreed that Company 1 would pay Mark Bruno approximately 20% of the insurance reimbursement amount for all Compounding Pharmacy 2 prescriptions for individuals Mark Bruno recruited to participate in the scheme and for prescriptions signed by defendant BRIAN SOKALSKY.

41. It was further part of the conspiracy that defendant VINCENT TORNARI instructed Mark Bruno to pay the Recruits in exchange for their agreement to receive the prescription medications covered by their insurance plans and to pay in cash to avoid detection.

42. It was further part of the conspiracy that in approximately the fall of 2015, defendant VINCENT TORNARI and Mark Bruno approached defendant BRIAN SOKALSKY

about signing Compounding Pharmacy 2 prescriptions, and defendant BRIAN SOKALSKY agreed to sign Compounding Pharmacy 2 prescriptions as part of the scheme.

43. It was further part of the conspiracy that defendant VINCENT TORNARI showed defendant BRIAN SOKALSKY pre-printed prescription forms from Compounding Pharmacy 2, and instructed defendant BRIAN SOKALSKY as to which medications were reimbursed by certain insurance plans, including SHBP and SEHBP, for the highest amounts.

44. It was further part of the conspiracy that Mark Bruno recruited individuals who had prescription drug benefits under the SHBP and SEHBP and told them that he would pay them to see defendant BRIAN SOKALSKY to obtain prescriptions signed by defendant BRIAN SOKALSKY.

45. It was further part of the conspiracy that defendant VINCENT TORNARI and Mark Bruno gave defendant BRIAN SOKALSKY money and other remuneration as a reward for signing Compounding Pharmacy 2 prescriptions.

46. It was further part of the conspiracy that, in exchange for defendant BRIAN SOKALSKY's agreement to write Compounding Pharmacy 2 prescriptions, Mark Bruno referred patients to defendant BRIAN SOKALSKY's medical practice.

47. It was further part of the conspiracy that defendant BRIAN SOKALSKY would bill insurance plans and receive payments for seeing individuals who came to his practice solely to obtain prescriptions.

48. It was further part of the conspiracy that the Recruits saw defendant BRIAN SOKALSKY solely to obtain prescriptions with high reimbursement rates under their specific insurance plans, including those with benefits under the SHBP and SEHBP.

14

49.    It was further part of the conspiracy that defendant VINCENT TORNARI and Mark Bruno would notify defendant BRIAN SOKALSKY in advance of appointments made by the Recruits that were coming to see him to obtain the prescriptions.

50.    It was further part of the conspiracy that, in other instances, Mark Bruno would call defendant BRIAN SOKALSKY's office to schedule appointments for the Recruits to see defendant BRIAN SOKALSKY to obtain prescription medications, and defendant BRIAN SOKALSKY knew which patients came to see him to obtain the prescriptions.

51.    It was further part of the conspiracy that the Recruits did not have a prior doctor-patient relationship with defendant BRIAN SOKALSKY and did not return to his medical practice after seeing him in order to obtain the prescriptions he signed for them.

52.    It was further part of the conspiracy that defendant BRIAN SOKALSKY signed and authorized Compounding Pharmacy 2 prescriptions without a medical necessity for the medications.  For example, on certain occasions:

a.    Defendant BRIAN SOKALSKY signed prescriptions for medications for patients who did not have conditions the medications were supposed to treat.

b.    Defendant BRIAN SOKALSKY signed and authorized prescriptions for medications that were not discussed during the individual's visit with defendant BRIAN SOKALSKY.

c.    Defendant BRIAN SOKALSKY signed and authorized prescriptions after not evaluating or only cursorily evaluating the patients for the ailments the medications were allegedly designed to treat.

      d.      Defendant BRIAN SOKALSKY signed Compounding Pharmacy 2 prescriptions for Mark Bruno and Individual 15 without first conducting an office visit or medical evaluation of either of them.

53.     It was further part of the conspiracy that, once defendant BRIAN SOKALSKY signed the Compounding Pharmacy 2 pre-printed prescription form, he did not return the prescription to the individual to be filled at a pharmacy chosen by the individual. Instead, defendant BRIAN SOKALSKY and others caused the completed prescriptions to be faxed to Compounding Pharmacy 2, which then filled the prescriptions and then billed Pharmacy Benefits Administrator or another pharmacy benefits administrator.

54.     It was further part of the conspiracy that when Pharmacy Benefits Administrator or another pharmacy benefits administrator stopped covering a medication, defendant VINCENT TORNARI gave Mark Bruno a letter template containing false information and instructed Mark Bruno to have Recruits send this letter to appeal the denial of coverage.

55.     It was further part of the conspiracy that certain Recruits, at the direction of defendant VINCENT TORNARI and Mark Bruno, sent or caused the submission of these letters containing false information to appeal the denial of coverage.

56.     It was further part of the conspiracy that defendant VINCENT TORNARI informed defendant BRIAN SOKALSKY when additional medications with high insurance rates or reformulations were identified so that defendant BRIAN SOKALSKY would know to write and authorize these prescriptions.

57.     It was further part of the conspiracy that when Pharmacy Benefits Administrator or another pharmacy benefits administrator stopped covering a particular medication and Compounding Pharmacy 2 substituted a different combination of ingredients, defendant BRIAN

SOKALSKY prescribed the new medication without having follow-up visits or discussions with the patients.

58.     It was further part of the conspiracy that defendant BRIAN SOKALSKY, defendant VINCENT TORNARI, Mark Bruno, and others caused Pharmacy Benefits Administrator and other pharmacy benefits administrators to pay Compounding Pharmacy 2 over $500,000 for medications.

In violation of Title 18, United States Code, Section 1349.

17

## COUNTS 16-18
### (Health Care Fraud)

59.     Paragraph 2 of Count 1 and Paragraphs 29-34 and 36-58 of Count 15 of this

Indictment are hereby realleged and incorporated as though set forth in full herein.

60.     On or about the dates listed below, in the District of New Jersey and elsewhere,

defendants

### BRIAN SOKALSKY and
### VINCENT TORNARI

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud and

to obtain, by means of materially false and fraudulent pretenses, representations, and promises,

money owned by and under the custody and control of health care benefit programs, in

connection with the delivery of health care benefits, items, and services:

| Count | Date | Execution |
|-------|------|-----------|
| 16 | 12/9/2015 | BRIAN SOKALSKY caused a prescription for Individual 12 to be completed and faxed to Compounding Pharmacy 2 |
| 17 | 1/25/2016 | BRIAN SOKALSKY caused a prescription for Individual 13 to be completed and faxed to Compounding Pharmacy 2 |
| 18 | 7/29/2016 | BRIAN SOKALSKY caused a prescription for Individual 14 to be completed and faxed to Compounding Pharmacy 2 |

In violation of Title 18, United States Code, Section 1347, and Title 18, United States

Code, Section 2.

18

## COUNTS 19-21
### (Wire Fraud)

61. Paragraph 2 of Count 1 and Paragraphs 29-34 and 36-58 of Count 15 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

62. On or about the dates listed below, in the District of New Jersey and elsewhere, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, defendants

BRIAN SOKALSKY and
VINCENT TORNARI

for the purpose of executing such scheme and artifice, did knowingly and with fraudulent intent transmit and cause to be transmitted by means of wire communications in interstate commerce the following writings, signs, signals, pictures, and sounds:

| Count | Date | From | To | Wire Transmission |
|-------|------|------|-----|-------------------|
| 19 | 12/9/2015 | Defendant BRIAN SOKALSKY's medical office in New Jersey | Compounding Pharmacy 2 | Fax transmission of prescription for Individual 15. |
| 20 | 3/11/2016 | Defendant BRIAN SOKALSKY's medical office in New Jersey | Compounding Pharmacy 2 | Fax transmission of prescription for Individual 16. |
| 21 | 5/10/2016 | Defendant BRIAN SOKALSKY's medical office in New Jersey | Compounding Pharmacy 2 | Fax transmission of prescription for Individual 17. |

In violation of Title 18, United States Code, Section 1343, and Title 18, United States Code, Section 2.

## COUNT 22
### (Conspiracy to Violate Travel Act By Commercial Bribery and Conspiracy to Deprive Patients and Employer of Honest Services)

63.     Paragraph 2 of Count 1 and Paragraphs 31 and 33-34 of Count 15 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

64.     Defendant ASHLEY LYONS-VALENTI, who also used the name Ashley Lyons, was an advanced practice nurse and an employee of Medical Office 1 in Pennsville, New Jersey. As an advanced practice nurse, defendant ASHLEY LYONS-VALENTI was authorized under New Jersey law and regulations to prescribe medicines.

65.     Individual 18 was the boyfriend of defendant ASHLEY LYONS-VALENTI and lived with her.

66.     Medical Office 1 was a provider of health care services to patients through doctors, advanced practice nurses, and other medical staff.  Medical Office 1 had an office in Pennsville, New Jersey.

67.     Defendant ASHLEY LYONS-VALENTI had a duty as an employee of Medical Office 1 to give honest services to Medical Office 1 and avoid conflicts of interest.  Defendant ASHLEY LYONS-VALENTI had a fiduciary duty as an advanced practice nurse to act in the best interest of her patients and a duty of honest services to her patients.  The duties of defendant ASHLEY LYONS-VALENTI to her employer and her patients included the duty to refrain from agreeing to accept and accepting bribes and kickbacks relating to the performance of her duties as an employee of Medical Office 1 and her decisions to prescribe medications to patients.

68. From in or about April 2014 through in or about October 2016, in Salem County, in the District of New Jersey, and elsewhere, defendants

ASHLEY LYONS-VALENTI and
VINCENT TORNARI

did knowingly and intentionally conspire and agree with each other and with others to commit offenses against the United States, that is:

a. To knowingly and intentionally travel in interstate commerce and use and cause to be used the mail and facilities in interstate commerce with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, that is, commercial bribery by paying for prescribing medications, contrary to N.J.S.A. § 2C:21-10 and Title 18, United States Code, Section 1952(a)(3), and thereafter, to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of such unlawful activity, contrary to Title 18, United States Code, Section 1952(a)(3); and

b. To knowingly and intentionally devise a scheme and artifice to defraud ASHLEY LYONS-VALENTI's patients of their right to her honest services as their advanced practice nurse and to defraud ASHLEY LYONS-VALENTI's employer of its right to her honest services, and to transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, contrary to Title 18, United States Code, Sections 1343 and 1346.

### Object of the Conspiracy

69.     The object of the conspiracy was for defendants ASHLEY LYONS-VALENTI and VINCENT TORNARI to unlawfully enrich themselves by: (1) paying, causing the payment of and receiving bribes and kickbacks to defendant ASHLEY LYONS-VALENTI and Individual 18 for prescribing Compounding Pharmacy 2 medications, and (2) receiving commission payments after insurance paid for those prescriptions.

### Manner and Means of the Conspiracy

70.     It was part of the conspiracy that in or about April 2014, defendant VINCENT TORNARI asked defendant ASHLEY LYONS-VALENTI to prescribe medications prepared by Compounding Pharmacy 2 and, at the same time, hired her live-in boyfriend Individual 18 to be a sales representative for Company 1 selling Compounding Pharmacy 2 medications, even though Individual 18 had no experience in pharmaceutical sales.

71.     It was further part of the conspiracy that on or about April 24, 2014, Individual 18 and defendant VINCENT TORNARI signed a contract under which Individual 18 would receive a commission from Company 1 for each Compounding Pharmacy 2 prescription that Individual 18 originated if insurance paid for that prescription.

72.     It was further part of the conspiracy that defendant ASHLEY LYONS-VALENTI knew that Individual 18 would receive a commission on each covered prescription she wrote and that she would receive a kickback consisting of half of each commission payment that Individual 18 received.

73.     It was further part of the conspiracy that on or about April 24, 2014, the same day as the effective date of the contract signed by Individual 18, defendant ASHLEY LYONS-VALENTI wrote for the first time a prescription for a Compounding Pharmacy 2 medication.

22

74.    It was further part of the conspiracy that defendant ASHLEY LYONS-VALENTI wrote at least 18 additional Compounding Pharmacy 2 prescriptions from April 25, 2014 through May 2, 2014.

75.    It was further part of the conspiracy that on or about May 8, 2014, defendant VINCENT TORNARI signed a commission check from Company 1 for $3,800 to Individual 18 for prescriptions from April 25, 2014, through May 2, 2014.

76.    It was further part of the conspiracy that on or about May 12, 2014, defendant ASHLEY LYONS-VALENTI received a check for $1,900 from Individual 18 as her half of the May 8, 2014 commission payment.

77.    It was further part of the conspiracy that during the course of the conspiracy, defendant ASHLEY LYONS-VALENTI continued to prescribe Compounding Pharmacy 2 medications, defendant VINCENT TORNARI continued to write commission checks and cause commission payments to Individual 18, and Individual 18 continued to give defendant ASHLEY LYONS-VALENTI half of the commission checks he received.

78.    It was further part of the conspiracy that defendant ASHLEY LYONS-VALENTI did not disclose to her patients or to Medical Office 1 that she and Individual 18 were receiving payments for her prescribing Compounding Pharmacy 2 medications.

79.    It was further part of the conspiracy that defendant ASHLEY LYONS-VALENTI asked her co-workers and subordinates at Medical Office 1 to agree to receive Compounding Pharmacy 2 medications and persuaded co-workers to receive the medications, typically without performing a medical examination to determine that they needed the medications.

80.    It was further part of the conspiracy that to conceal her prescribing of Compounding Pharmacy 2 medications for individuals who were patients of Medical Office 1,

23

defendant ASHLEY LYONS-VALENTI did not include copies of the prescriptions in the

patients' medical files and did not list the medications in the patients' medical records, contrary

to the policies and practices of Medical Office 1 and contrary to her duties to her patients.

      81.    It was further part of the conspiracy that defendant ASHLEY LYONS-VALENTI

caused prescriptions to be faxed from Medical Office 1 in New Jersey to Compounding

Pharmacy 2 in Pennsylvania.

      82.    It was further part of the conspiracy that prescriptions signed by defendant

ASHLEY LYONS-VALENTI were sometimes faxed to Compounding Pharmacy 2 from the fax

machine in the New Jersey home of defendant ASHLEY LYONS-VALENTI and Individual 18

on the fax machine used for Individual 18's real estate business.

      83.    It was further part of the conspiracy that in order for Individual 18 to receive

commission payments and to receive half of those payments as kickbacks and bribes herself,

defendant ASHLEY LYONS-VALENTI prescribed medications offered by Compounding

Pharmacy 2 instead of prescribing medications from another pharmacy, telling the patient to

obtain an over-the-counter medication, or not prescribing any medication because it was

unnecessary.

      84.    It was further part of the conspiracy that defendant ASHLEY LYONS-VALENTI

breached her duties to her patients by writing medically unnecessary Compounding Pharmacy 2

prescriptions so that she and Individual 18 would receive payments and by failing to inform her

patients about the payments.

      85.    It was further part of the conspiracy that defendant ASHLEY LYONS-VALENTI

breached her duties to her employer Medical Office 1 by writing medically unnecessary

Compounding Pharmacy 2 prescriptions so that she and Individual 18 would receive payments and by failing to inform Medical Office 1 about the payments.

86.     It was further part of the conspiracy that defendant ASHLEY LYONS-VALENTI wrote over $1,250,000 in Compounding Pharmacy 2 prescriptions, that defendant VINCENT TORNARI signed or authorized payments of over $190,000 to Individual 18, and that defendant ASHLEY LYONS-VALENTI received over $90,000 from Individual 18 for writing those prescriptions.

## Overt Acts

87.     On or about July 10, 2015, defendant ASHLEY LYONS-VALENTI signed and caused to be faxed to Compounding Pharmacy 2 a prescription for Individual 19.

88.     On or about July 18, 2015, defendant ASHLEY LYONS-VALENTI signed and caused to be faxed to Compounding Pharmacy 2 a prescription for Individual 20.

89.     On or about July 21, 2015, defendant ASHLEY LYONS-VALENTI signed and caused to be faxed to Compounding Pharmacy 2 a prescription for Individual 21.

90.     On or about September 3, 2015, defendant VINCENT TORNARI signed a Company 1 check for $6,135.60 payable to Individual 18.

91.     On or about September 5, 2015, defendant ASHLEY LYONS-VALENTI received a check payable to her for $3,067.50 from Individual 18.

92.     On or about September 16, 2015, defendant VINCENT TORNARI signed a Company 1 check for $4,863.55 payable to Individual 18.

93.     On or about September 15, 2015, defendant ASHLEY LYONS-VALENTI received a check payable to her for $2,431.77 from Individual 18.

94.     On or about October 23, 2015, defendant ASHLEY LYONS-VALENTI signed and caused to be faxed to Compounding Pharmacy 2 a prescription for Individual 22.

95.     On or about December 10, 2015, defendant ASHLEY LYONS-VALENTI signed and caused to be faxed to Compounding Pharmacy 2 a prescription for Individual 23.

96.     On or about August 20, 2015, defendant ASHLEY LYONS-VALENTI signed an attestation for Medical Office 1 that contained false statements about her compliance with Medical Office 1's conflict of interest policies.

In violation of Title 18, United States Code, Section 371.

26

## COUNTS 23-27
### (Honest Services Fraud)

97.     Paragraph 2 of Count 1 and Paragraphs 63-67 and 69-96 of Count 22 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

98.     On or about the dates listed below, in the District of New Jersey and elsewhere, having devised and intending to devise a scheme and artifice to defraud defendant ASHLEY LYONS-VALENTI's patients of their right to her honest services as their advanced practice nurse and to defraud defendant ASHLEY LYONS-VALENTI's employer of its right to her honest services, and for defendant VINCENT TORNARI to obtain money by paying bribes and kickbacks to defendant ASHLEY LYONS-VALENTI, defendants

ASHLEY LYONS-VALENTI and
VINCENT TORNARI,

for the purpose of executing such scheme and artifice, did knowingly and with fraudulent intent transmit and cause to be transmitted by means of wire communications in interstate commerce the following writings, signs, signals, pictures, and sounds:

| Count | Date | Interstate Wire Transmission |
|-------|------|------------------------------|
| 23 | 7/10/2015 | ASHLEY LYONS-VALENTI signed and caused to be faxed to Compounding Pharmacy 2 a prescription for Individual 19. |
| 24 | 7/18/2015 | ASHLEY LYONS-VALENTI signed and caused to be faxed to Compounding Pharmacy 2 a prescription for Individual 20. |
| 25 | 7/21/2015 | ASHLEY LYONS-VALENTI signed and caused to be faxed to Compounding Pharmacy 2 a prescription for Individual 21. |
| 26 | 10/23/2015 | ASHLEY LYONS-VALENTI signed and caused to be faxed to Compounding Pharmacy 2 a prescription for Individual 22. |
| 27 | 12/10/2015 | ASHLEY LYONS-VALENTI signed and caused to be faxed to Compounding Pharmacy 2 a prescription for Individual 23. |

In violation of Title 18, United States Code, Sections 1343 and 1346, and Title 18, United States Code, Section 2.

## COUNTS 28-32
### (False Statements Relating to Health Care Matters)

99.     Paragraphs 2-3 of Count 1 and Paragraph 64 of Count 22 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

100.    Judd Holt was a pharmaceutical sales representative.

101.    Judd Holt asked defendant ASHLEY LYONS-VALENTI to sign numerous Compounding Pharmacy 1 prescriptions for individuals who were not patients of defendant ASHLEY LYONS-VALENTI or Medical Office 1.

102.    Defendant ASHLEY LYONS-VALENTI signed the Compounding Pharmacy 1 prescriptions even though she did not know or examine the patients, did not determine that the medications were medically necessary for the patients, and did not determine if the medications might have any adverse effects on the patients.

103.    In the Compounding Pharmacy 1 prescriptions signed by defendant ASHLEY LYONS-VALENTI, she falsely attested that she had reviewed the patient's medical records, determined that the items ordered were medically necessary, and had a face-to-face examination with the patient, when in fact she did not review the patient's medical records, determine that the medications ordered were medically necessary, or meet the patient.

104.    The Compounding Pharmacy 1 prescriptions signed by defendant ASHLEY LYONS-VALENTI were faxed from Medical Office 1 to Compounding Pharmacy 1.

105.    Compounding Pharmacy 1 filled the prescriptions and submitted a claim to Pharmacy Benefits Administrator, and Pharmacy Benefits Administrator paid the claims.

106.    On or about the dates specified below, in the District of New Jersey, and

elsewhere, defendant

ASHLEY LYONS-VALENTI

in a matter involving a health care benefit program, did knowingly and willfully falsify, conceal,

and cover up by trick, scheme, and device a material fact, and make materially false, fictitious,

and fraudulent statements and representations, and make and use materially false writings and

documents knowing the same to contain materially false, fictitious, and fraudulent statements

and entries, in connection with the delivery of and payment for health care benefits, items, and

services:

| Count | Date | False statements and representations |
|-------|------|--------------------------------------|
| 28 | 7/29/2015 | ASHLEY LYONS-VALENTI signed a prescription for Individual 24, who was not her patient, and falsely stated on the prescription that she had reviewed Individual 24's medical records, determined that the items ordered were medically necessary, and had a face-to-face examination with Individual 24. |
| 29 | 8/28/2015 | ASHLEY LYONS-VALENTI signed a prescription for Individual 25, who was not her patient, and falsely stated on the prescription that she had reviewed Individual 25's medical records, determined that the items ordered were medically necessary, and had a face-to-face examination with Individual 25. |
| 30 | 10/8/2015 | ASHLEY LYONS-VALENTI signed a prescription for Individual 25, who was not her patient, and falsely stated on the prescription that she had reviewed Individual 25's medical records, determined that the items ordered were medically necessary, and had a face-to-face examination with Individual 25. |
| 31 | 12/18/2015 | ASHLEY LYONS-VALENTI signed a prescription for Individual 25, who was not her patient, and falsely stated on the prescription that she had reviewed Individual 25's medical records, determined that the items ordered were medically necessary, and had a face-to-face examination with Individual 25. |
| 32 | 7/29/2015 | ASHLEY LYONS-VALENTI signed a prescription for Individual 26, who was not her patient, and falsely stated on a prescription that she had reviewed Individual 26's medical records, determined that the items |

| Count | Date | False statements and representations |
|-------|------|--------------------------------------|
|       |      | ordered were medically necessary, and had a face-to-face examination with Individual 26. |

In violation of Title 18, United States Code, Section 1035, and Title 18, United States

Code, Section 2.

30

## COUNT 33
### (Obstruction of Justice – Witness Tampering)

107.    Paragraphs 63-67 and 69-96 of Count 22 of the Indictment are hereby realleged and incorporated as though set forth in full herein.

108.    Individual 23 was a resident of New Jersey.

109.    Individual 23 worked with defendant ASHLEY LYONS-VALENTI at Medical Office 1 during 2014 and 2015.

110.    Defendant ASHLEY LYONS-VALENTI prescribed Compounding Pharmacy 2 medications for Individual 23 without performing a medical examination of Individual 23 and for the spouse of Individual 23 without performing a medical examination of the spouse.

111.    Prior to November 2019, defendant ASHLEY LYONS-VALENTI was told that the Federal Bureau of Investigation and other federal criminal authorities were investigating her and that she likely would be charged with crimes.

112.    In or about November 2019, Individual 23 was interviewed by agents of the Federal Bureau of Investigation ("FBI") about defendant ASHLEY LYONS-VALENTI. Before and after that interview, defendant ASHLEY LYONS-VALENTI communicated with Individual 23 about the interview.

113.    In or about December 2019, Individual 23 was notified that Individual 23 would be testifying before the federal grand jury sitting in Camden about defendant ASHLEY LYONS-VALENTI.

114.    Defendant ASHLEY LYONS-VALENTI learned that Individual 23 was going to testify in the federal grand jury before Individual 23 testified.

31

115.    Defendant ASHLEY LYONS-VALENTI communicated repeatedly with Individual 23 by telephone and by text and Facebook messages about Individual 23's interview with the FBI and grand jury testimony before Individual 23 spoke to the FBI and the grand jury.

116.    Defendant ASHLEY LYONS-VALENTI made false and misleading statements intend to influence Individual 23's statements to the FBI and grand jury testimony, including the following statements:

a.    Defendant ASHLEY LYONS-VALENTI told Individual 23 that LYONS-VALENTI did not receive any kickbacks for prescribing Compounding Pharmacy 2 medications and did not receive any money from anybody, which was false;

b.    Defendant ASHLEY LYONS-VALENTI asked Individual 23 to tell the FBI that LYONS-VALENTI had examined Individual 23 before prescribing medication for Individual 23 but was too busy to document it, when in fact LYONS-VALENTI did not examine Individual 23 before writing Individual 23 a Compounding Pharmacy 2 prescription; and

c.    Defendant ASHLEY LYONS-VALENTI told Individual 23 to tell the FBI and the grand jury that LYONS-VALENTI did not do anything wrong, which was false.

117.    From in or about November 2019 through in or about December 2019, in Salem County, in the District of New Jersey, and elsewhere, defendant

ASHLEY LYONS-VALENTI

did knowingly engage in misleading conduct toward another person with intent to influence the testimony of any person in an official proceeding.

In violation of Title 18, United States Code, Section 1512(b).

32

## FORFEITURE ALLEGATIONS
### Count 1 and Count 15

1.      Upon conviction of the conspiracy offenses alleged in Counts 1 and 15 of this

Indictment, defendants BRIAN SOKALSKY and VINCENT TORNARI shall forfeit to the

United States:

> a.      Pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the
> respective defendants obtained that constitutes or is derived, directly and
> indirectly, from gross proceeds traceable to the commission of the
> conspiracy to commit health care fraud, contrary to 18 U.S.C. § 1347, and
> all property traceable to such property; and

> b.      Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all
> property, real and personal, the respective defendants obtained that
> constitutes or is derived from proceeds traceable to the commission of the
> conspiracy to commit wire fraud, contrary to 18 U.S.C. § 1343, and all
> property traceable to such property.

### Counts 2-8 and Counts 16-18

2.      Upon conviction of one or more of the health care fraud offenses alleged in

Counts 2-8 and 16-18 of this Indictment, the defendant specified in each count shall forfeit to the

United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendant

obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to

the commission of the health care fraud offense charged in such count, and all property traceable

to such property.

### Counts 9-14 and Counts 19-21

3.      Upon conviction of one or more of the wire fraud offenses alleged in Counts 9-14

and 19-21 of this Indictment, the defendant specified in each count shall forfeit to the United

States:

> a.      Pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the
> respective defendants obtained that constitutes or is derived, directly and
> indirectly, from gross proceeds traceable to the commission of the

33

conspiracy to commit health care fraud, contrary to 18 U.S.C. § 1347, and all property traceable to such property; and

b.      Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, the respective defendants obtained that constitutes or is derived from proceeds traceable to the commission of the conspiracy to commit wire fraud, contrary to 18 U.S.C. § 1343, and all property traceable to such property.

### Count 22

4.      Upon conviction of the conspiracy offense alleged in Count 22 of this Indictment, defendants VINCENT TORNARI and ASHLEY LYONS-VALENTI shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendant obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the health care fraud offense charged in such count, and all property traceable to such property.

### Counts 23-27

5.      Upon conviction of one or more of the offenses alleged in Counts 23-27 of this Indictment, defendants ASHLEY LYONS-VALENTI and VINCENT TORNARI shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendant obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the health care fraud offense charged in such count, and all property traceable to such property.

### Counts 28-32

6.      Upon conviction of one or more of the offenses alleged in Counts 28-32 of this Indictment, defendant ASHLEY LYONS-VALENTI shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendant obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the

34

health care fraud offense charged in such count, and all property traceable to such property.

### Count 33

7. Upon conviction of the witness tampering offense in violation of 18 U.S.C. §
1512 alleged in Count 33 of this Indictment, defendant ASHLEY LYONS-VALENTI shall
forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all
property, real and personal, the defendant obtained that constitutes or is derived from proceeds
traceable to the commission of the offense charged in such count, and all property traceable to
such property.


[ REMAINDER OF PAGE LEFT BLANK ]

## SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Allegations)

8.      If any of the above-described forfeitable property, as a result of any act or

omission of the respective defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third person;

      c.      has been placed beyond the jurisdiction of the Court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be subdivided

           without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C.

§ 2461(c) and 18 U.S.C. § 982(b), to seek forfeiture of any other property of the respective

defendant up to the value of the above-described forfeitable property.


A TRUE BILL


FOREPERSON


*Craig Carpenito*
CRAIG CARPENITO
United States Attorney

36

CASE NUMBER:  20-

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

BRIAN SOKALSKY,
VINCENT TORNARI, and
ASHLEY LYONS-VALENTI

INDICTMENT FOR
18 U.S.C. §§ 1349, 1347, 1343, 371, 1035, 1346, 1512(b), and 2

A True Bill.

Foreperson

CRAIG CARPENITO
U.S. ATTORNEY, NEWARK, NEW JERSEY

R. DAVID WALK, JR.
CHRISTINA O. HUD
ASSISTANT U.S. ATTORNEYS
CAMDEN, NEW JERSEY
(856) 757-5026

USA-48AD8
(Ed. 1/97)

37